UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANA CAUDILL and LEADERS, LLC | ) | |
| d/b/a RED KEY REALTY LEADERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13 C 4693 |
| | ) | |
| KELLER WILLIAMS REALTY, INC., | ) | |
| a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendant Keller Williams Realty, Inc. ("Keller Williams") to dismiss the complaint of Plaintiffs Jana Caudill ("Caudill") and Leaders, LLC d/b/a Red Key Realty Leaders ("Leaders") (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Keller Williams' motion is denied.

## BACKGROUND

The following well-pleaded allegations are derived from Plaintiffs' first amended complaint, and the Court accepts them as true for purposes of the instant motion. Keller Williams is a real estate company and franchisor that sells and licenses real estate franchises. Caudill is the owner and operator of Leaders, a real

estate agency serving Northwest Indiana and South Chicagoland's residential and commercial real estate markets.

On February 17, 2011, Caudill filed suit against Keller Williams for claims arising out of her former employment with it. Thereafter, Keller Williams terminated its franchise agreement with Leaders. Caudill amended her complaint to add Leaders as a plaintiff in the action.

On October 22, 2012, Plaintiffs and Keller Williams participated in a private mediation in Chicago, Illinois. Attorneys for all parties worked out of Illinois. After the mediation, the parties continued to negotiate until they reached a confidential Settlement Agreement and Mutual General Release (the "Settlement Agreement") in December 2012. With respect to confidentiality, paragraph 10 of the Settlement Agreement states:

> "The terms, covenants, conditions of this settlement, specifically including the amount to be paid in settlement (and any amounts offered or rejected by any party in settlement negotiations), this Settlement Agreement itself, and the allegations of the parties, will be held strictly in confidence, and will not be disseminated or disclosed by the parties, their attorneys, their employees, or anyone acting on their behalf or in concert with them, to anyone (specifically including the parties' independent real estate agents and associates), except to tax professionals to the extent needed for tax advice, to the parties insurance carriers, attorneys who represented the parties in the Lawsuit, underwriters and reinsurers, the mediator, and to governmental agencies or regulatory authorities as required by law, and then only to the extent necessary and required to be disclosed by law, by lawful subpoena or otherwise."

The Settlement Agreement also provides for liquidated damages of $10,000.00 for each breach of the confidentiality provision. Keller Williams first requested that

the amount be $50,000.00 per occurrence, but based on Plaintiffs' suggestion, the parties agreed that $10,000.00 per occurrence was a more reasonable approximation.

In reliance on the Settlement Agreement, Plaintiffs dismissed their initial suit against Keller Williams with prejudice on December 28, 2012. On December 31, 2012, the Settlement Agreement became effective. Beginning on or about March 29, 2013, Keller Williams sent a Franchise Disclosure Document (the "Disclosure Document") containing terms of the Settlement Agreement to existing franchisees, regional owners, regional directors and prospective franchisees. The terms in the Disclosure Document contained information about Plaintiffs' February 17, 2011 lawsuit against Keller Williams, including: (i) the case name; (ii) a summary of the claims; (iii) the history of the litigation; (iv) the settlement amount; and (v) a statement that the settlement was entered into "without a finding or admission of liability" on the part of Keller Williams. Plaintiffs derive their business from referrals in the real estate industry, including many of the recipients who received the Disclosure Document.

On July 9, 2013, Plaintiffs filed their first amended complaint against Keller Williams. The one count complaint alleges that Keller Williams breached the confidentiality provision in the Settlement Agreement. Plaintiffs allege that they have suffered and continue to suffer damages, including loss of professional opportunities, future income, embarrassment, and harm to Caudill's reputation because of the breach. Plaintiffs seek: (i) compensatory damages, including liquidated damages;

(ii) injunctive relief prohibiting Keller Williams from future disclosures that violate the confidentiality provision; and (iii) attorneys' fees, plus costs. On August 16, 2013, Keller Williams moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations but must provide enough factual support to raise their rights to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must allow the court to draw the reasonable inference that the defendant is liable for the purported misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Id.* at 678.

## DISCUSSION

Keller Williams moves to dismiss the complaint for failure to state a valid cause of action under applicable Texas substantive law. To establish a breach of contract, a plaintiff must prove that: (i) a valid contract existed; (ii) the plaintiff

performed or tendered performance; (iii) the defendant breached the contract; and (iv) the plaintiff was damaged as a result of the breach. *Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 733-34 (Tex. App. 2010). The parties do not dispute the first two elements for a breach of contract claim. Instead, Keller Williams insists that Plaintiffs failed to properly establish the remaining two elements—breach and damages.

## I.     Breach

Plaintiffs contend that Keller Williams breached the Settlement Agreement by distributing the Disclosure Document to existing franchisees, regional owners, regional directors and prospective franchisees. Keller Williams argues that a breach has not been established because: (i) the Settlement Agreement did not prohibit disclosure to employees who act on behalf of Keller Williams; (ii) Keller Williams was required by law to disclose certain terms of the settlement; and (iii) Keller Williams was not required to instruct recipients of the Disclosure Document to maintain the information's confidentiality.

At this preliminary stage of the litigation, this Court finds that Plaintiffs' complaint contains sufficient facts to indicate that a breach of contract is plausible. Keller Williams' arguments for why dismissal is proper contain various questions of fact which this Court presently declines to explore. Issues of fact such as: (i) a purported unintentional drafting error in the Settlement Agreement;  (ii) who exactly

received the Disclosure Documents; (iii) in what states those recipients resided; and (iv) the applicable state franchise laws preclude dismissal pursuant to Rule 12(b)(6).

## II. Damages

Keller Williams argues that: (i) Plaintiffs do not sufficiently allege pecuniary damages as a result of the breach; and (ii) the liquidated damages provision is unenforceable as a penalty.

## A. Pecuniary Damages

Keller Williams avers that Plaintiffs' complaint contains no allegations of actual, non-speculative, or pecuniary injury. Plaintiffs allege in their complaint that they "have suffered and continue to suffer damages, including but not limited to loss of professional opportunities, future income and embarrassment." Caudill also alleges harm to her personal reputation in the facts section of the complaint.

Under Texas law, the rule for measuring damages in a breach of contract action is just compensation for the loss or damage actually sustained. *Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.*, 181 S.W.3d 879, 891-92 (Tex. App. 2006). Compensatory damages must be the natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981). Plaintiffs must prove that they suffered some pecuniary loss as a result of the breach. *Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 396 (Tex. App. 1998). The absence of this causal connection between the alleged breach and the alleged damages will prevent recovery. *Id.* at 397. Loss of business reputation is

- 6 -

not a recoverable injury for a breach of contract claim. *Rubalcaba v. Pac./Atl. Crop Exch.*, 952 S.W.2d 552, 559 (Tex. App. 1997). Mental anguish damages are also not recoverable for a breach of contract. *Hallmark v. Hand*, 885 S.W.2d 471, 481 (Tex. App. 1994).

Construing the allegations in the light most favorable to Plaintiffs, this Court must accept as true that Plaintiffs *have* lost professional opportunities due to the breach. This Court agrees that Texas would not recognize damages for Plaintiffs' alleged loss of business reputation or embarrassment, but Plaintiffs have successfully pleaded enough facts to establish actual loss of professional opportunities and future income. The exact opportunities or amount lost does not yet have to be specified. Therefore, discovery will assist the Court in determining whether various factual issues exist with respect to Plaintiffs' damages.

## B. Liquidated Damages

Keller Williams asserts that the liquidated damages provision in the Settlement Agreement is invalid as an unenforceable penalty. If damages for the prospective breach of a contract are difficult to measure and the stipulated damages are a reasonable estimate of actual damages, then such a provision is valid and enforceable as liquidated damages; otherwise it is void as a penalty. *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005). Whether a contractual provision is an enforceable liquidated damages provision or an unenforceable penalty is a question

of law. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). However, sometimes factual issues must be resolved before the legal question can be decided. *Id*. at 788.

A liquidated damages clause is enforceable if the court finds that: (i) the harm caused by the breach is incapable or difficult to estimate; and (ii) the amount of liquidated damages called for is a reasonable forecast of just compensation. *Phillips*, 820 S.W.2d at 788. The "difficulty of estimation" and "reasonable forecast" questions must be determined from evidence of the circumstances which existed at the time the parties executed the agreement. *Healix Infusion Therapy, Inc. v. Bellos*, 11-02-00346-CV, 2003 WL 22411873 (Tex. App. Oct. 23, 2003). "That damages are not yet ascertainable is not tantamount to evidence of 'zero' damages." *Id*.

In the instant case, Plaintiffs contend that the liquidated damages provision of "$10,000.00 per occurrence" is enforceable and not a penalty, especially since Keller Williams originally requested $50,000.00 per occurrence, but later agreed on $10,000.00. Plaintiffs' complaint includes paragraph 13 of the Settlement Agreement where the parties agree that damages for a violation of the confidentiality provision "are not susceptible to precise quantification". On its face, this unambiguous assertion provides some insight into the circumstances surrounding the execution of the Settlement Agreement. However, before this Court answers the legal question Keller Williams posits of whether this liquidated damages provision is a penalty, factual issues must be resolved. To determine the reasonableness of the liquidated damages provision would require this Court to make certain determinations—like the

circumstances that existed when the parties executed the Settlement Agreement—that it is presently unprepared to make. The issue of reasonableness pertains more to the merits, and a Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. *See McReynolds*, 694 F.3d at 878.

## CONCLUSION

For the foregoing reasons, Keller Williams' motion to dismiss is denied.

_____
Charles P. Kocoras
United States District Judge

Dated: <u>October 31, 2013</u>